# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

       **Plaintiff,**

**vs.**                                                                 **NO. 2:13-cr-03695 RB**

**ANTHONY PEREZ,**

       **Defendant.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Anthony Perez's Motion to Withdraw Guilty Plea. (Doc. 100). The Government opposes this motion. (Doc. 108). The Court held an evidentiary hearing on December 10, 2014. Having carefully considered the submissions of counsel, and relevant law, the Court denies this motion.

## I.      Factual Background and Procedural History

In June 2013, Las Cruces Metro Narcotics Agent Ernesto DiMatteo[1] received information that Co-Defendant Matthew Pena was trafficking methamphetamine. (Tr. 63). Acting in his undercover capacity, Agent DiMatteo purchased a sample of methamphetamine from Mr. Pena's girlfriend, Co-Defendant Rebecca Torres. (Tr. 64). When Agent DiMatteo asked to purchase two to three ounces of methamphetamine, Agent DiMatteo was told he needed to go to Deming, New Mexico and meet Mr. Pena in person. (*Id.*)

On July 3, 2013, Agent DiMatteo went to Deming and called Mr. Pena. (Tr. 65). Mr. Pena instructed him to meet him at the Blake's Lotaburger. (*Id.*) Several FBI and Las Cruces Metro Narcotics Agents set up surveillance for the meeting. (Tr. 66). At about 1:00 p.m., Agent DiMatteo

---

1 The Court finds the testimony of Agent DiMatteo to be fully credible.

arrived at Blake's Lotaburger and waited in the parking lot. (Tr. 68). While he was waiting, Agent DiMatteo noticed a black-over-tan Tahoe, with oversized wheels and tires. (*Id.*) The passenger and driver windows were rolled down and Agent DiMatteo observed that the Tahoe was occupied by two men. (*Id.*) Co-Defendant Robert Snow was the registered owner of the Tahoe. (*Id.*)

After about forty-five minutes, the Tahoe pulled up next to Agent DiMatteo. (Tr. 69). Mr. Perez, the right front passenger, instructed Agent DiMatteo to follow them to a park. (Tr. 70). Agent DiMatteo refused. (*Id.*) Mr. Snow and Mr. Perez left the parking lot, drove around the area, and pulled up to a surveillance vehicle. (Tr. 71). An agent in the surveillance vehicle photographed Mr. Perez. (Government's Exhibit 4). Agents took a number of photographs depicting Mr. Perez and Mr. Snow in the Tahoe. (*Id.*)

Shortly thereafter, the Tahoe returned. (Tr. 72). Mr. Snow was driving, Mr. Perez was in the right front passenger seat, and Mr. Pena was in the back seat. (*Id.*) Mr. Pena told Agent DiMatteo to get into the truck. (*Id.*) Agent DiMatteo refused and opened the backdoor. (*Id.*) Mr. Snow and Mr. Perez turned toward the backseat and Mr. Pena pulled a large plastic bag from his pants. (Tr. 73). Agent DiMatteo saw that the bag contained a white crystalline substance consistent with methamphetamine. (Tr. 75). Mr. Perez and Mr. Snow appeared to observe Mr. Pena's actions as they were only a few feet away from Mr. Pena. (*Id.*) Agent DiMatteo refused to go with them and suggested that Mr. Pena come with Agent DiMatteo. (*Id.*) Mr. Pena agreed and got into Agent DiMatteo's vehicle. (Tr. 75).

Agent DiMatteo drove across the street, negotiated with Mr. Pena, and purchased the methamphetamine for $1,800. (Tr. 76). During the sale, Agent DiMatteo saw the Tahoe in the area. (*Id.*) After Agent DiMatteo dropped Mr. Pena off on the next block, Agent DiMatteo saw Mr.

Snow and Mr. Perez pick up Mr. Pena in the Tahoe. (Tr. 77). Agent DiMatteo made an audio recording of his conversation with Mr. Pena, during which Mr. Pena did not mention Mr. Perez. (Doc. 80; 102).

On November 13, 2013, the Indictment charged: (1) Mr. Pena and Ms. Torres with distribution of methamphetamine and aiding and abetting on June 18, 2013, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. §2 (Count 1); and (2) Mr. Perez, Mr. Pena, and Mr. Snow with distribution of 5 grams and more of methamphetamine on July 3, 2013, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2 (Count 2). (Doc. 2). On January 3, 2014, Robert Snow passed away and the charges against him were dismissed. (Docs. 25 and 44).

On February 20, 2014, Pedro Pineda was appointed to represent Mr. Perez. (Doc. 50). At the evidentiary hearing, Mr. Pineda testified that Mr. Perez was a difficult client but they worked through their differences.[2] (*Id.*) Mr. Pineda met with Mr. Perez on February 21, 2014 and discussed the Indictment, possible penalties, and possible guideline range. (Defendant Exhibit A.) On March 4, 2014, Mr. Pineda met with Mr. Perez to review the Government's disclosures and discuss a continuance of trial. (*Id.*) Mr. Pineda gave Mr. Perez copies of the relevant discovery and reviewed the discovery with him. (Tr. 5). On April 7, 2014, Mr. Pineda met with Mr. Perez to discuss a plea versus trial. (*Id.*) On April 9, 2014, the Court set the trial for May 19, 2014. (Doc. 65). On April 18, 2014, Co-Defendant Rebecca Torres pleaded guilty pursuant to a plea agreement. (Doc. 68).

On April 18, 2014, Mr. Pineda met with Mr. Perez to discuss the options of a plea agreement and a plea to the Indictment. (Defendant Exhibit A). At this meeting, Mr. Perez agreed to stipulate to the admissibility of the testimony of the Government's expert witness. (Tr. 23). On

---

2 The Court finds the testimony of Mr. Pineda to be fully credible.

3

April 22, 2014, Mr. Pineda met with Mr. Perez who stated that he had chosen to go to trial. (Defendant Exhibit A). Mr. Perez[3] testified at the evidentiary hearing that Mr. Pena had relayed messages to Mr. Perez that Mr. Perez was innocent. (Tr. 44-45).

On May 9, 2004, Assistant United States Attorney Maria Armijo sent an e-mail to Mr. Pineda to inquire whether Mr. Perez realized his sentence could be enhanced to a ten year mandatory minimum pursuant to 21 U.S.C. § 851 due to his prior drug conviction. (Plaintiff Exhibit 2). Ms. Armijo agreed not to seek the enhancement if Mr. Perez pleaded guilty. Mr. Perez faced a five year mandatory minimum sentence if he pled to the Indictment. Mr. Pineda informed Mr. Perez that if the Government filed the §851 enhancement, Mr. Perez would face a ten-year mandatory minimum sentence. (Tr. 15). Mr. Pineda responded to Ms. Armijo that he had informed Mr. Perez of the potential enhancement. (Plaintiff Exhibit 2). On May 12, 2014, Mr. Pineda met with Mr. Perez for trial preparation and to discuss trial strategy. (*Id.*)

On Tuesday, May 13, 2014, Ms. Armijo sent an e-mail to Mr. Pineda stating "I was getting ready to file the 851 enhancement but wanted to triple check with you that we are going to trial. Please let me know by 4:00 p.m. today." (Plaintiff Exhibit 2). Mr. Pineda responded that he planned to visit Mr. Perez that morning and he would let Ms. Armijo know. (*Id.*) On May 13, 2014, Mr. Pineda met with Mr. Perez to discuss the jury panel and prepare for trial. (Tr. 15). Mr. Perez changed his mind and decided to plead guilty. (*Id.*; Tr. 16).

On Wednesday, May 14, 2014, Mr. Pineda met with Mr. Pena and Orlando Mondragon, who is Mr. Pena's attorney. (Plaintiff Exhibit 3, Tr. 11). Mr. Pena told Mr. Pineda that he would not testify on Mr. Perez's behalf and that Mr. Perez should plead guilty. (*Id.*) Mr. Pena said he would invoke his Fifth Amendment right against self-incrimination if Mr. Perez called him to

---

3 The Court finds that Mr. Perez's testimony is not credible.

testify. (Doc. 42). This meeting occurred in the courthouse visiting cells about a half an hour before the plea hearings. (Tr. 17). Mr. Pineda testified at the evidentiary hearing that Mr. Pena did not exculpate Mr. Perez in any way. (Tr. 42). Mr. Pineda believed that Mr. Pena was intimidated by Mr. Perez as Mr. Pena was smaller than Mr. Perez. (*Id.*)

After meeting with Mr. Pena and Mr. Mondragon, Mr. Pineda informed Mr. Perez that Mr. Pena would not testify on his behalf. (Doc. 16). Mr. Pineda told Mr. Perez that he did not have to plead guilty. (*Id.*) Mr. Perez testified that on May 14, 2014, Mr. Pineda told him that if he did not take the plea that day he would not win at trial and he would receive the "max." (Tr. 46-47). Mr. Perez thought that if Mr. Pineda would talk with Mr. Pena the truth would be told and "everything was going to be okay." (Tr. 47). Mr. Perez testified that Mr. Pineda said that it did not matter to Mr. Pineda as Mr. Perez would be doing the time. (Tr. 48). On May 14, 2014, Mr. Perez pleaded guilty to the Indictment (Count 2). (Doc. 84). Mr. Perez testified that he knew he was entering the plea but he was scared and felt betrayed. (Tr. 48).

At the plea hearing, Mr. Perez admitted to the Government's recitation of the facts. (Doc. 108-1 at 6-7). Specifically, Assistant United States Attorney Alexander Shapiro stated that had this case gone to trial the Government would have proven that on July 3, 2013, Mr. Pena negotiated with an undercover agent to sell the undercover agent two ounces of methamphetamine. (Doc. 108-1 at 6). Later that day, Mr. Perez and Mr. Snow arrived at the meeting place driving a Chevrolet Tahoe and informed the undercover agent that they wanted the undercover agent to go with them to meet Mr. Pena. (*Id.*) After the undercover agent refused, Mr. Perez and Mr. Snow left and returned in the same vehicle with Mr. Pena. (Doc. 108-1 at 7). Mr. Perez and Mr. Snow served as lookouts while Mr. Pena sold 47.1 grams of methamphetamine to the undercover agent. (*Id.*)

Mr. Perez admitted these facts were true. (*Id*.) Mr. Perez admitted to serving as a lookout for the drug transaction and admitted he knew about the methamphetamine. (*Id*.) At the evidentiary hearing, Mr. Perez testified that he lied at the plea hearing. (Tr. 49 and 59).

At the plea hearing, Mr. Shapiro stated that the possibly penalties consisted of a mandatory minimum sentence of five years up to forty years imprisonment, a fine of up to $5,000,000, up to four years supervised release, and a $100 special penalty assessment. (Doc. 108-1 at 5). Mr. Perez stated that he understood the possible penalties. (*Id*.) Mr. Perez is a United States citizen. (*Id*.)

At the plea hearing, Mr. Perez stated he was satisfied with the representation he received from Mr. Pineda. (Doc. 108-1 at 8). Mr. Perez understood that his sentence could be harsher than the estimate that Mr. Pineda had discussed with him. (*Id*.) Mr. Perez knew about the advisory guidelines and realized that the Court could not determine his sentence until the presentence report was prepared. (*Id*.) Mr. Pineda believed the plea was in Mr. Perez's best interests. (Doc. 108-1 at 9).

United States Magistrate Judge Carmen Garza conducted the plea hearing. (Doc. 108-1). Judge Garza informed Mr. Perez of his rights and that he did not have to plead guilty. (Doc. 108-1 at 2). Judge Garza found that Mr. Perez was competent and capable of entering an informed plea; he was aware of the nature of the charges and the consequences of the plea; and his plea was knowing and voluntary. (Doc. 108-1 at 9). Judge Garza accepted the plea and adjudged Defendant Perez guilty. (*Id*.) Immediately after Mr. Perez pleaded guilty, Mr. Pena pleaded guilty to the Indictment (Counts 1 and 2). (Doc. 86). The Government did not file an enhancement pursuant to 18 U.S.C. § 851.

On June 10, 2014, Mr. Pineda moved to withdraw as counsel on the grounds that Mr. Perez wanted to withdraw his plea and wanted a new lawyer. (Doc. 88). On June 18, 2014, the motion to withdraw as counsel was granted. (Doc. 89). On June 19, 2014, Steven Almanza was appointed to represent Mr. Perez. (Doc. 90).

On September 9, 2014, Mr. Almanza filed a motion to withdraw guilty plea on behalf of Mr. Perez. (Doc. 100). Therein, Mr. Perez asserts that the plea was not knowing and voluntary and he is innocent of the charge. The Government responds that the plea was knowing and voluntary and there was a strong likelihood of conviction.

## III.   Discussion

A defendant may withdraw a guilty plea before sentencing if he "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). The Tenth Circuit has identified seven factors to guide a court's decision on whether to grant a motion to withdraw a plea: "(1) whether the defendant has asserted his innocence, (2) prejudice to the government, (3) delay in filing defendant's motion, (4) inconvenience to the court, (5) defendant's assistance of counsel, (6) whether the plea is knowing and voluntary, and (7) waste of judicial resources." *United States v. Hamilton*, 510 F.3d 1209, 1214 (10th Cir. 2007). The Tenth Circuit has "suggested an additional factor to consider: the likelihood of conviction." *United States v. Carr*, 80 F.3d 413, 421 n.5 (10th Cir. 1996).

If the defendant fails to carry his burden on asserted innocence, validity of the plea (whether it was given knowingly and voluntarily), and ineffective assistance of counsel, *Hamilton,* 510 F.3d at 1217, the Court need not address "the remaining factors . . . because these [remaining]

factors speak to the potential burden on the government and the court, rather than the defendant's reason for withdrawal." *id.; see also United States v. Byrum*, 567 F.3d 1255, 1265 (10th Cir. 2009).

The decision of whether to permit withdrawal of a plea "always and ultimately lies within the sound discretion of the district court to determine on a case by case basis when the standard is and isn't met." *United States v. Soto*, 660 F.3d 1264, 1267 (10th Cir. 2011) (quotations omitted). Appellate "review of a district court's denial of a motion to withdraw a guilty plea is for abuse of discretion." *Hamilton*, 510 F.3d at 1213-14. "Although a motion to withdraw a plea prior to sentencing should be freely allowed, we will not reverse a district court's decision [to deny a motion to withdraw a plea] unless the defendant can show that the court acted unjustly or unfairly." *Id.* (quotations omitted); *see also* Fed. R. Crim. P. 11(d)(2)(B).

Mr. Perez has not satisfied his burden to establish the three primary factors of asserted innocence, validity of the plea, and ineffective assistance of counsel. In his motion, Mr. Perez asserted his innocence. However, at the plea hearing he admitted to the Government's recitation of the facts. Moreover, the Government's case against Mr. Perez was very strong. Agent DiMatteo would have testified at trial that Mr. Perez provided significant assistance to Mr. Pena in carrying out the drug deal. The Government had photographs of Mr. Perez in the Tahoe aiding and abetting Mr. Pena's sale of methamphetamine to Agent DiMatteo. Mr. Perez appeared to observe Mr. Pena pull the plastic bag of methamphetamine out of his pants in the backseat. Mr. Perez had a prior felony conviction for methamphetamine in Arizona. If Mr. Perez proceeded to trial, he would need to testify in order to explain his presence at the scene of the crime. If he testified Mr. Perez would be subject to impeachment with his prior felony drug conviction. Mr. Perez believed that Mr. Pena would testify at trial and exonerate Mr. Perez. (*Id.*) However, Mr. Pena informed Mr. Pineda that

he would not testify and would invoke his rights under the Fifth Amendment if necessary. In light of the direct evidence linking Mr. Perez to the crime, Mr. Pena's testimony would have been of little use at trial, at any rate. Mr. Perez contends that Mr. Pena, at Mr. Pena's plea hearing, said he would only plead guilty if the factual predicate excluded Mr. Perez. Even if this contention is true, it does not diminish the strength of the Government's case against Mr. Perez.

The transcript of the plea demonstrates the validity of the plea. At the plea hearing, Mr. Perez admitted to the Government's recitation of the facts. Mr. Shapiro correctly stated the possible penalties. Mr. Perez understood the possible penalties and that his sentence could be harsher than the estimate that Mr. Pineda had discussed with him. Judge Garza informed Mr. Perez of his rights and found him competent. Judge Garza found that Mr. Perez was aware of the nature of the charges and the consequences of the plea; and that his plea was knowing and voluntary.

Mr. Pineda provided effective assistance of counsel. Mr. Pineda reviewed the discovery with Mr. Perez. Mr. Pineda correctly evaluated the strength of the Government's case and noted that Mr. Perez did not have an explanation for why he was at the scene of the crime. Mr. Pineda advised Mr. Perez that if Mr. Perez testified at trial, he would be subject to impeachment with his prior drug conviction. Mr. Pineda advised Mr. Perez of the Government's intent to file the § 851 enhancement. Mr. Pineda informed Mr. Perez that the Government's audio recordings of conversations between Mr. Pena and the undercover agent did not exonerate Mr. Perez. The fact that Mr. Pineda did not play the audio recording for Mr. Perez does not render his representation inadequate as the audio recording neither inculpated nor exculpated Mr. Perez. Mr. Pineda acted with due diligence in arranging a meeting with Mr. Pena and Mr. Mondragon. After Mr. Pineda verified that Mr. Pena refused to testify on behalf of Mr. Perez, Mr. Pineda accurately informed

Mr. Perez of his options. Mr. Pineda advised Mr. Perez that Mr. Perez did not have to plead guilty. Mr. Perez voluntarily chose to plead guilty. Mr. Perez has not established ineffective assistance of counsel.

## IV.    Conclusion

The Government has shown that the case against Mr. Perez was very strong in light of Agent DiMatteo's testimony and the photographs. The colloquy before Judge Garza establishes that the guilty plea was knowing and voluntary. Mr. Pineda correctly advised Mr. Perez that he had the choice of the guilty plea with a mandatory minimum of five years or trial with a mandatory minimum of ten years and a forty-year maximum. Based on the strength of the Government's case, the likelihood of conviction was very high. Not surprisingly, Mr. Perez decided to take the plea. Mr. Perez has not satisfied his burden to establish the three primary factors of asserted innocence, validity of the plea, and ineffective assistance of counsel.

**THEREFORE,**

**IT IS ORDERED** that Defendant Anthony Perez's Motion to Withdraw Guilty Plea (Doc. 100) is **DENIED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**